ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2011 APR 21 AM 11:49
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DONNIE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 311-009 |
| | ) | |
| GEORGIA DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Johnson State Prison ("JSP") in Wrightville, Georgia, filed the above-captioned case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). As Plaintiff is proceeding IFP, his complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

I. **BACKGROUND**

Plaintiff names the following Defendants: (1) the Georgia Department of Corrections ("GDOC"); (2) Dr. Caleb Duro Ajibade, Physician at JSP; (3) Tim Jones, Deputy Warden of Care and Treatment at JSP; (4) Keith Morris, Chief Counselor at JSP; (5) Jose Morales,

Warden at JSP; (6) Gail Powel, Healthcare Administrator at JSP; (7) Robert Spaulding, Mental Health Director at JSP; and (8) Brian Owens, Commissioner of the GDOC. (Doc. no. 1, p. 4.)

Plaintiff claims that he suffers from mental health issues, as well as several physical ailments including obesity, heart trouble, breathing problems, lower back pain, hernia problems, knee problems, and swollen ankles and feet. (Id. at 5-6, 12.) Plaintiff states that these conditions cause him "serious pain." (Id.) Plaintiff alleges that he does not receive proper medical care for his "heart and breathing problems" because there is not a doctor at JSP twenty-four hours per day, and the nurses and physician assistants on staff are not properly trained in the medical care that Plaintiff needs. (Id. at 12.) Plaintiff also claims that Defendant Ajibade refuses to see him, tells Plaintiff that there is nothing wrong with him, and has instructed the nurses at JSP to deny Plaintiff medical appointments. (Id. at 5.) Plaintiff further alleges that Defendant Ajibade "fail[s] to recognize a mental health diagnosis," and refuses to supply Plaintiff with a wheelchair. (Id. at 8, 11.) Plaintiff goes on to claim that Defendant Ajibade has told Plaintiff that he cannot properly treat his medical problems, but refuses to recommend that Plaintiff be transferred to a "proper medical prison." (Id. at 12.) Finally, Plaintiff alleges that Defendant Spaulding is denying Plaintiff adequate care for his mental health issues by limiting Plaintiff's access to a mental health counselor to mere seconds per month. (Id. at 9.)

Plaintiff indicates that he has not been able to resolve his issues with Defendant Ajibade because each Defendant he has spoken with refers him to someone else. (See id. at 5-6.) Plaintiff claims that he has spoken with Defendants Jones and Morales about

Defendant Ajibade and was told to file a grievance and speak to his counselor, respectively. (Id.) Plaintiff further claims that he was told by Defendant Powel to speak with Defendant Morales. (Id. at 6.) Plaintiff goes on to state that his mental health counselors tell him to see Defendant Spaulding, and when he speaks with Defendant Spaulding, he is told to file a grievance. (Id.) Plaintiff states that when he files grievances, Defendant Jones does not answer them and Defendant Morris tells Plaintiff to speak with his counselor whenever he inquires about them. (Id. at 5.)

Plaintiff also makes several allegations pertaining to the conditions of his confinement. Plaintiff states that, because of his obesity and mental health medications, he needs a place to sit in the shower and should not be made to stand for the up to fifteen minutes it takes for "count time." (Id. at 8.) Plaintiff, who states that he is mentally ill, also claims that, because he is housed with severely mentally ill prisoners, he is exposed to unclean showers that others have used as a bathroom and unclean clothes due to having to share a washer and dryer with other prisoners who have feces on their clothes. (Id. at 9-10, 13.) Plaintiff alleges that he has suffered skin problems as a result of his dirty clothes. (Id. at 13.) Additionally, Plaintiff claims that the "violent mentally ill" are not separated from the "nonviolent mentally ill." (Id. at 12.) Plaintiff also complains that the mentally ill prisoners should be separated from the non-mentally ill prisoners during activities such as meals, the medication line, and programs due to threats and harassment by the non-mentally ill prisoners. (Id. at 11, 13.)

3

Plaintiff also states that, due to the inadequate number of personnel,[1] who are also unqualified, "gang members and other mental health prisoners . . . control the prison environment with fear and intimidation." (Id. at 9.) Plaintiff further claims the guards allow fights and permit non-mentally ill prisoners to enter the units where the mentally-ill are housed and exploit them. (Id. at 12.)

Lastly, Plaintiff alleges that the GDOC and Defendants Owens, Morales, Jones, and Morris, have violated the Americans with Disabilities Act ("ADA") by not training mental health counselors in the prison grievance policy and not allowing them to assist mentally ill prisoners in the grievance procedure. (Id. at 6, 7, 11, 13-14.) Plaintiff seeks monetary relief only from Defendant Ajibade. (Id. at 15.) Plaintiff also seeks an order and/or injunction from the Court that all mental health counselors must be trained in the prison grievance policy and allowed to assist mentally ill prisoners in the prison grievance procedure. (Id.)

## II. DISCUSSION

### A. Deliberate Indifference Claims

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that he fails to state a claim for deliberate indifference based on: 1) Defendant Ajibade's alleged "failure to recognize a mental health diagnosis;" 2) the alleged failure to provide proper medical treatment by not having a doctor present at JSP twenty-four hours per day; 3) Defendant Ajibade's alleged refusal to supply Plaintiff with a wheelchair; and 4) Defendant Ajibade's

---

[1] Plaintiff does not specify the type of personnel that he is referring to such as guards or prison officials.

alleged refusal to transfer Plaintiff to a "proper medical prison."[2] (Doc. no. 1, pp. 11-12.) Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "Deliberate indifference," the requisite state of mind for all Eighth Amendment claims except excessive force, requires proof that the prison official disregarded an excessive risk of which he was actually aware. Id. at 837-38; Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010).

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. Farmer, 511 U.S. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require a plaintiff to show "more than mere negligence," and look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted). To state a viable Eighth Amendment claim, Plaintiff must show that the defendant acted with

---

[2]In a simultaneously filed Order, the Court is directing that service of process be effected upon Defendant Ajibade based on Plaintiff's Eighth Amendment claim for deliberate indifference to a serious medical need resulting from his allegations that Defendant Ajibade refuses to see him and has instructed the nurses at JSP to deny Plaintiff medical appointments.

"deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. See id. at 1543-44. Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Mere allegations of negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Here, Plaintiff's allegations that Defendant Ajibade "fail[s] recognize a mental health diagnosis," and that Plaintiff does not receive proper medical care because there is not a doctor present at JSP twenty-four hours per day, fail to state a claim for deliberate indifference to a serious medical need. (See doc. no. 1, pp. 5-6, 8, 11-12.) Notably, "section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). Additionally, vague and conclusory allegations are not sufficient to state a claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (noting that vague and conclusory accusations are insufficient to state a civil rights claim).

First, Plaintiff has not stated what "mental health diagnosis" that Defendant Ajibade has allegedly failed to recognize, nor how this alleged failure has affected Plaintiff, much less that the diagnosis is substantially serious or that by failing to recognize it, Defendant Ajibade has acted with obduracy and wantonness beyond mere negligence. Instead, Plaintiff merely

supplies a vague and conclusory statement that Defendant Ajibade has "failed to recognize" some mental health diagnosis. (See doc. no. 1, p. 11.) Such an allegation is insufficient to state a claim for deliberate indifference to a serious medical need. In regards to Plaintiff's allegation that he does not receive proper medical care because there is not a doctor at JSP twenty-four hours per day, Plaintiff fails to state who is responsible for the alleged failure, much less provide proof of an affirmative causal connection between the alleged failure and the actions of a particular person. Additionally, Plaintiff has not stated how he was affected by the lack of a twenty-four hour doctor, other than vague allegations about needing kinds of treatment that nurses and physician assistants could not provide. (See id. at 12.) Therefore, Plaintiff has also failed to state a claim upon which relief can be granted based on his allegation regarding the lack of a twenty-four hour physician.

Plaintiff has also failed to state a claim for medical indifference to a serious medical need based on his allegation that Defendant Ajibade refuses to supply him with a wheelchair. As an initial matter, Plaintiff does not specify which of his alleged physical ailments necessitates the use of a wheelchair; thus, Plaintiff has failed to meet the objective standard required to demonstrate deliberate indifference. Additionally, Plaintiff's complaint fails to state what harm he has suffered as a result of being denied a wheelchair. Plaintiff simply states that "[Defendant] Ajibade will not give me a wheelchair which is cruel punishment to deny me this simple request." (Id. at 8.) Thus, if Plaintiff did satisfy the objective standard, his claim would still fail as he has not alleged any facts to demonstrate that Defendant Ajibade's refusal to supply him with a wheelchair was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers,

792 F.2d at 1058.

Finally, Plaintiff fails to state a claim based on his allegation that Defendant Ajibade will not transfer him to a "proper medical prison." (Id.) Inmates do not have a constitutional right to be housed at one facility or another. Meachum v. Fano, 427 U.S. 215, 224-25 (1976). Indeed, having considered the issue of involuntary prisoner transfers, the Supreme Court found no constitutional liberty interest in the involuntary transfer of an inmate to a different facility. Montanye v. Haymes, 427 U.S. 236, 242-43 (1976). Thus, Defendant Ajibade's alleged refusal to transfer Plaintiff to a "proper medical prison" does state a claim for a violation of Plaintiff's constitutional rights.

In sum, Plaintiff has failed to state a claim for which relief can be granted based on his allegations that: 1) Defendant Ajibade "fail[ed] to recognize a mental health diagnosis;" 2) he has not been provided proper medical treatment due to not having a doctor present at JSP twenty-four hours a day; 3) Defendant Ajibade has refused to supply Plaintiff with a wheelchair; and 4) Defendant Ajibade has refused to transfer Plaintiff to a "proper medical prison." Therefore, these claims should be dismissed.

### B.     Claims based on Alleged Conditions of Confinement Violations

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that he fails to state a claim based on his allegations regarding his conditions of confinement, such as unclean showers and clothes. As indicated, *supra*, to state a § 1983 claim, Plaintiff must allege an affirmative causal connection between the claimed constitutional deprivation and actions taken by a particular person under color of state law. See LaMarca, 995 F.2d at 1538.

Here, Plaintiff has once again failed to allege a causal connection between any Defendant and the alleged conditions of confinement that Plaintiff claims violate his constitutional rights. Therefore, Plaintiff has failed to state a claim based on his allegations regarding his conditions of confinement.

### C. ADA Claim Based on Prison Grievance Procedure

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, Plaintiff also fails to state a claim against the GDOC and Defendants Owens, Morales, Jones, and Morris, for a violation of the ADA based on the prison grievance procedure. As an initial matter, the ADA does authorize lawsuits against individuals. Title II of the ADA prohibits discrimination in services, programs, or activities of a "public entity" or "discrimination by any such entity."[3] 43 U.S.C. § 12132. The ADA defines a "public entity" as:

> (A) any State or local government;
> (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
> (C) the National Railroad Passenger Corporation, and any commuter authority.

Thus, "public entities" under Title II of the ADA includes state correctional facilities. United States v. Georgia, 546 U.S. 151, 154 (2006). However, the above definition clearly does not include individuals. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1172 (11th Cir. 2003).

---

[3] Title I and III of the ADA are inapplicable to prisoner cases such as this. Title I of the ADA prohibits employment discrimination. 42 U.S.C. § 12112. Title III of the ADA prohibits discrimination by public accommodations involved in interstate commerce such as hotels, restaurants, and privately operated transportation services. 42 U.S.C. §§ 12182, 12184.

9

Thus, Plaintiff fails to state a claim under the ADA against Defendants Owens, Morales, Jones, and Morris.

Additionally, to establish a prima facie case under Title II of the ADA, a plaintiff must show

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bricoll v. Miami-Dade County, 480 F.3d 1072, 1083 (11th Cir. 2007).

Here, however, Plaintiff's has failed to allege sufficient facts to show that he is a qualified individual with a disability under the ADA. The mere fact that Plaintiff is mentally ill does not in and of itself establish existence of a "disability" under the ADA without the additional allegation that one or more of Plaintiff's major life activities are limited by his mental illness. See 42 U.S.C. § 12102(a)(1)(A) (requiring that a mental impairment substantially limit one or more major life activities in order to qualify as a disability). Plaintiff has made no such allegation. Accordingly, Plaintiff has failed to state claim under the ADA against the GDOC; as this is the only claim that Plaintiff makes against the GDOC, it should be dismissed from this case.

Additionally, to the extent that Plaintiff is attempting to state a claim against Defendants Jones or Morris based solely upon allegations of denial of access to the grievance procedure, those claims must also fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198

F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff's grievance-related claim against Defendant Jones is simply that he told Plaintiff multiple times to file a grievance and then failed to answer the grievances

11

that Plaintiff filed. (Doc. no. 1, p. 5.) Likewise, Plaintiff's allegation against Defendant Morris is that when Plaintiff asked Defendant Morris about his grievances, he was told that he should speak to his counselor about it. (Id.) However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims against Defendants Jones and Morris, regarding alleged violations of the grievance procedures, fail as a matter of law. As that is the only claim that Plaintiff alleges against Defendant Morris other than the ADA claim that the Court debunked above, he should be dismissed from this case.

### D. Supervisory Liability

To the extent that Plaintiff may be trying to blame Defendants Owens, Morales, Jones, and Powel for the alleged acts of deliberate indifference by Defendant Ajibade, his claims fail. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Although

Plaintiff does claim that Defendants Morales, Jones and Powel were aware of the alleged acts of deliberate indifference by Defendant Ajibade, he does not claim any personal participation on their part. Plaintiff does not claim that Defendant Owens had any knowledge of the alleged acts.

Plaintiff also fails to allege a "causal connection" between the above-named Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[4] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Although Plaintiff has alleged that he told Defendants Morales, Jones, and Powel about the alleged actions of deliberate indifference by Defendant Ajibade, that allegation alone is not sufficient to meet the high standard of widespread abuse, nor does it establish that those Defendants were responsible for a custom

---

[4]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

or policy that resulted in deliberate indifference. As stated above, Plaintiff does not claim that Defendant Owens had any knowledge of the alleged deliberate indifference, much less that Defendant Owens knew of a history of widespread abuse or was responsible for a policy resulting in deliberate indifference. Therefore, Plaintiff has failed to state a claim upon which relief may be granted for deliberate indifference against Defendants Owens, Morales, Jones and Powel on the basis of supervisory liability. Thus, these Defendants should be dismissed from this case.

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims of deliberate indifference based on the alleged failure to have a doctor present at JSP twenty-four hours per day, Defendant Ajibade's alleged "failure to recognize a mental health diagnosis," Defendant Ajibade's alleged refusal to supply Plaintiff with a wheelchair, and Defendant Ajibade's alleged failure to transfer Plaintiff to a "proper medical prison," as well as Plaintiff's conditions of confinement claims, his ADA claims based on the prison grievance procedure, and Defendants Jones, Morris, Morales, Powel, Owens, and the GDOC be **DISMISSED**.[5]

SO REPORTED and RECOMMENDED this 21st day of April, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5] In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Ajibade and Spaulding based on Plaintiff's Eighth Amendment claims for deliberate indifference to Plaintiff's serious medical needs.